CANDACE WILLIAMS v. ALONZO NEVILLE.

*Removal of Administrator—Appointment of Next of Kin— Renunciation.*

1. The next of kin of a deceased person has a right to administer upon his estate within six months after his death, or, in lieu thereof, within that time to have appointed such person as he may select, if in other respects qualified.

2. *The Code* requires that before any person other than the next of kin can be appointed administrator within six months from the decedent's death, a written renunciation of such next of kin must be filed with the Clerk, unless after thirty days, upon citation to show cause, he is adjudged to have renounced ; and the mere expressed intent of such person that he would not have anything to do with the administration is no valid renunciation.

3. If the next of kin, in answer to citation, name his appointee, and such person, after appointment, fails to qualify, then, though six months had not expired, the Clerk would be authorized to appoint another.

4. In a proceeding to remove an administrator, one N., and have appointed in his stead E. W. T., instituted by the decedent's next of kin, W., it appeared that the decedent died in May, 1890 ; N. was appointed in June, and after W. had declared she would not have anything to do with the administration. In September W. wrote to the Clerk who made the appointment, that she still claimed the right to administer and wished the appointment of one J. S. T., and J. S. T. wrote he would accept. In October W. filed a paper formally renouncing her right to administer in favor of E. W. T., and the motion for the removal of N. and the appointment of E. W. T. in his place was heard on October 27th, and refused on the ground that she (W) had already renounced in favor of J. S. T.:

WILLIAMS *v.* NEVILLE.

*Held*, to be error,—(1) E. W. T. should have been appointed, and was not bound to go before the Clerk to qualify within the six months from the decedent's death, nor at all, pending the appeal to the Judge upon the Clerk's refusal of the motion for removal and appointment, and after the Clerk had adjudged that the plaintiff had not the right to administer; (2) The proper course of procedure is to allow E. W. T. reasonable time after N.'s removal, not less than thirty days, to qualify; (3) The Clerk has no jurisdiction to appoint pending the appeal.

APPEAL from an order of *Boykin, J.,* overruling an order previously made by Lassiter, Clerk of the Superior Court of GRANVILLE County, refusing to remove a creditor who had been appointed administrator and appoint a person designated by the next of kin of the decedent.

The order of the Clerk appealed from was as follows:

"This motion to remove Alonzo Neville, administrator of Emily Knight, coming on to be heard and having been heard, and said Alonzo Neville having offered in evidence a letter of one Mrs. Candace Williams, dated 8th September, 1890, to R. W. Lassiter, C. S. C., also a letter of J. S. Timberlake to him, said Clerk of said date, and the said Alonzo Neville admitting that the renunciation of said Mrs. Candace Williams was duly executed before F. P. Pierce, the subscribing witness, which paper is filed, and no charges being preferred against said administrator, the Court is of opinion that he should not be removed from his office, and that said Mrs. Candace Williams had no right or power to name the administrator of Mrs. Knight. The Court finds as a fact, and it is admitted, that said Emily Knight died 8th May, 1890, in Granville County, and that Mrs. Candace Williams is the next of kin of said deceased, and that said Alonzo Neville is the largest creditor of said estate. From this ruling said Candace Williams and her said appointee appealed," etc.

The facts appearing from the record and findings of the Court below are set out in the opinion.

*Mr. J. B. Batchelor*, for plaintiff.

*Messrs. R. H. Battle, M. V. Lanier* and *N. B. Cannady*, for defendant.

AVERY, J.: It is conceded that Candace Williams, being the only sister of the decedent, who left neither husband, child nor brother surviving her, had the right to administer within six months after her sister's death. She had also the right within that time to select and recommend such person as she might prefer if she did not wish to administer herself, and if her nominee was suitable in character, habits and intellect, to demand his appointment   *Little* v. *Berry*, 94 N. C., 433; *Ritchie* v. *McAuslin*, 1 Haywood, 220; *Pearce* v. *Castrix*, 8 Jones, 71; *Wallis* v. *Wallis*, Winston, 78; Schouler on Exrs., § 113.

Emily Knight died in Granville County on the 8th day of May, 1890. On the 14th of June, 1890, the Clerk of the Superior Court of Granville County granted letters of administration to the defendant Alonzo Neville, who was the largest creditor.. Candace Williams had not filed any paper renouncing her right, as next of kin, to administer, but the defendant had visited her at her home in Franklin County, after the death of her sister and before the said 14th of June, and, in a conversation then had with her, she had declared to him " that she would not. have anything to do with, and would not administer upon," the estate of the decedent. *The Code*, § 1378, provides that " when any person applies for administration, and any other person has a prior right thereto, a written renunciation of the person or persons having-such prior right must be produced and filed with the Clerk." It is manifest, therefore, that the language used by the plaintiff in conversation did not, in contemplation of law, amount to a renunciation. In *Hill* v. *Alspaugh*, 72 N. C., 404, the Court, construing sections 6, 7 and 8 of Battle's

108—36

Revisal (*The Code*, §§ 1378 to 1380), said: "We think the true intent and meaning of the statute is, that the persons primarily entitled to administration shall assert their right and comply with the law within six months after the death of the intestate; and that a party interested, wishing to quicken their diligence within that time, must do so by citation as prescribed by statute, or if a person not preferred applies for administration within six months he must produce the written renunciation of the person or persons having prior right." It was only after the lapse of six months that the Clerk had the right to appoint the " most competent creditor," when plaintiff had neither renounced in writing nor applied for letters for herself or some suitable person selected by her After the expiration of thirty days (after June 8, 1890), the defendant might have applied to the Clerk to issue a citation to the plaintiff to show cause why she should not be decreed to have renounced. It was his own folly, if, instead of pursuing the course plainly pointed out by the law, he applied for and obtained letters of administration at the expiration of only thirty-six days after the death of Emily Knight. It was in his power to compel her to renounce or actively assert her right within twenty days. In the absence of such citation, the law gave the plaintiff six months to deliberate and determine whether she would apply for letters of administration to be issued either to herself or her appointee. The appointment of Neville having been made contrary to law, the Clerk ought first to have revoked the letters illegally issued to him, upon the motion of the person entitled to administer or to nominate, and then to have allowed a reasonable time for her or her appointee to qualify. *Hughes* v. *Pipkin*, Philips, 4. If the plaintiff, in answer to a citation issued in the manner indicated by the law, had claimed the right for herself or another, and the person named by her had been appointed by the Court, and had failed or refused within a reasonable time to qualify, then,

though the six months had not expired, the Clerk would have been authorized by law to appoint another. *Stoker* v. *Kendall, Busbee,* 242.

On the 8th day of September, 1890, Candace Williams wrote a letter to the Clerk (R. W. Lassiter) stating that she claimed her right to administer within six months (four months only having then expired) from the death of her sister; that she had given that privilege to J. S. Timberlake, and wished him to revoke the letters of administration which, as she had ascertained from reading an advertisement, had been granted to the defendant. She insisted also that, as the larger part of the property was in Franklin County, letters ought to be granted by the Clerk of the Superior Court of that County. On the same day (September 8th) J. S. Timberlake also wrote to R. W. Lassiter, Clerk, that, at the request of plaintiff, he had consented to administer on the estate of her sister, Mrs. Knight, and would administer within six months, as he claimed a right to do, but, as the most of her estate was in Franklin County, he expected to administer there. It was evident that J. S. Timberlake had advised her, upon such information as he had, that the Clerk of the Superior Court of Franklin County alone had jurisdiction, whereas, in fact, the Court of Granville had acquired sole jurisdiction by first moving in the matter, though its order was subject to revocation on motion of plaintiff. *The Code,* § 1375; *Claywell* v. *Sudderth,* 77 N. C., 287.

On the 1st day of October, 1890, the plaintiff filed before R. W. Lassiter, Clerk of the Superior Court of Granville, the following paper, addressed to Lassiter, Clerk:

" I, Candace Williams, sister of Mrs. Emily Knight, and entitled to administer on her estate, hereby renounce my right to qualify as such administrator, and request that the Clerk of the Superior Court appoint E. W. Timberlake. I further certify that I am the only sister, living, of the said Emily Knight, and that she had no brother at her death.

October 1, 1890." (Signed by Candace Williams, and witnessed by F. P. Pierce.)

" I am well acquainted with Mrs. Candace Williams, and she is the only sister of Mrs. Emily Knight. I further know that she has no brother living." (Signed by F. P. Pierce )

On the 27th of October, 1890, the parties, with their attorneys, appeared before said R. W. Lassiter, Clerk, when he refused the motion to remove Alonzo Neville, as administrator, resting his ruling in express terms upon the ground that the letter of Candace Williams, dated September 8th, and that of J. S. Timberlake of the same date, amounted to a total revocation on her part, and that "Mrs. Candace Williams had no right or power to name the administrator of Mrs. Knight." This ruling was palpably erroneous. In *Little* v. *Berry*, *supra*, this Court, conceding that no question had ever been raised as to the right of the next of kin to renounce in favor of a suitable person selected by them where a decedent had died intestate, went further, and overruling *Suttle* v. *Turner*, 8 Jones, 403, declared that the same rule applied in case of the appointment of an administrator *cum testamento annexo*, whether the will was proven and the executor qualified before July 1st, 1869, under the provisions of Revised Code, ch. 40, § 2, or after that date under the Code of Civil Procedure, which was then enacted. *The Code*, § 1376; Bat. Rev., ch. 45, § 1. The appeal in that case was from an explicit ruling of the Judge below that the next of kin had no right to designate the person who should be appointed in their stead.

The refusal to appoint E. W. Timberlake, who was nominated on October 1st, was error on the part of the Clerk, and after the appeal to the Judge of the Superior Court on the 27th of October, 1890, the Clerk had no further control over the matter. The previous notice, dated August 8th, to the effect that the plaintiff expected to renounce before the Clerk in Franklin County in favor of J. S. Timberlake, and ask

Lassiter to revoke the letters to Neville, was not, as it was not intended to be, a renunciation of a right to administer, such as would justify the order made. The paper filed October 1st was a formal renunciation in favor of her own nominee, E. W. Timberlake, within less than five months after Mrs. Knight's death. It was the first renunciation filed, and it was a conditional one. E. W. Timberlake was not required to go before the Clerk on the 27th of October, anticipating the action of the Clerk, with a bond executed in the same sum named in Neville's bond. There is neither precedent nor reason for such practice. Upon his examination as an applicant, under section 1388 of *The Code*, the Clerk might have valued the personal property at a higher figure after acquiring such information as he could give than he had previously done. So that the framers of the statute must have contemplated that the amount of bond should depend upon the application and examination of the principal named in it, unless the Clerk preferred to examine another person.

After the appeal to the Superior Court on October 27th, E. W. Timberlake was not required to appear before the Clerk for the twelve days remaining after the expiration of the whole of the six months pending the appeal in the higher Court, and go through the vain ceremony of tendering a bond in a sum fixed by himself to a Clerk who had solemnly declared, as a conclusion of law, that the plaintiff had no right to select him and demand his appointment and Neville's removal.

On the 27th of October, 1890, the attorneys of the plaintiff entered the motion, which appears of record, to appoint E. W. Timberlake in accordance with the request dated October 1, 1890, and it was this motion which was refused on that day, and from which an appeal was then and there taken, as appears from the Clerk's order. The fact that Candace Williams and her husband, pending that appeal, and before it was heard before *Boykin, J.*, at January Term, 1890,

filed before the Clerk a more formal renunciation in favor of E. W. Timberlake, does not affect his right, or her right for him, to insist upon the removal of Neville, and his appointment by reason of the designation on October 1st. After the controversy had been transferred to the Superior Court in term time the Clerk had no jurisdiction of the matter. The paper dated "November Term" purports to be only " a ratification of the power I (she) have heretofore given him, E. W. Timberlake," to act as such, evidently referring to the paper of October 1st.

The Judge finds as a fact that E. W. Timberlake has never applied for letters of administration. It was a vain and foolish thing to apply after refusal of an application made in due time to have Neville removed. He could not be appointed till the defendant could be removed, and his removal was to be made, if at all, at the instance of the plaintiff. *Garrison* v. *Cox*, 95 N. C., 353.

It was error to refuse to remove Neville when he had been appointed contrary to law. The Clerk ought to have removed him, and to have given notice to E. W. Timberlake to qualify within a reasonable time—say thirty days from service of notice—and such will be the proper order when this opinion shall be certified. *Wallis* v. *Wallis, supra.* In the case of *Stoker* v. *Kendall, supra*, the facts were that a creditor gave notice, as Neville should have done in this case, to one who was the next of kin of a decedent, that he will make application at a certain term of the County Court for letters of administration, and at said term the person so notified appeared before the Court, and an order was entered appointing him, with the proviso that he should give bond in a sum named. This Court said in that case that three months after entering the order of appointment was more than a reasonable time to allow him for filing bond, and on his failure to do so before the next February Term it was proper for the County Court to then appoint the creditor. What is reason-

able time, when the statute does not fix it, is a question for the Court. *Hughes* v. *Pipkin, supra.*

We think, for the reasons stated, that there was no error in the ruling of the Court below that the Clerk erred in refusing to remove the defendant, and that the plaintiff being entitled on the 1st of October to designate a suitable person to act as administrator, and her motion being then refused, has still the right to demand the appointment of E. W. Timberlake, if he be adjudged a suitable person, or to administer herself, or designate another person. There is no error.

Affirmed.