EMMA R. BOYNTON v. LEO D. HEARTT, PUBLIC ADMINISTRATOR.

(Filed 3 April, 1912.)

1. Public Administrator—Period of Appointment—Unexpired Term —Interpretation of Statutes.

The term of a public administrator is fixed by statute as eight years, without provision when that of any appointee, as such, is to begin or terminate, or power of appointment for an unexpired term. Hence the appointment of a public administrator is for eight years, and is not affected by a mistake of the clerk in stating in the appointment that it was for the unexpired term of his predecessor, or fixing the term of the new appointee for a less period.

2. Same—Removal—Application—Parties Entitled.

One who is a proper and competent person to act as public administrator, and has qualified, as such, on the estate of deceased, should not necessarily be removed for the reason that his term of office expired before his qualification, and this should not be done except at the instance of one having a prior right to administer.

3. Executors and Administrators—Supervision—Power of Courts—Distributee.

The right of administration is not now as important as it was before our statute of distributions was enacted, for he now acts under the direction of the court, whose duty is to see that a competent person is appointed; and the appointee cannot, by any act of his, affect the right of those entitled to share in the distribution of the estate.

4. Public Administrator—Removal—Application—Nonresidents—Interpretation of Statutes.

One who has qualified as public administrator of a decedent's estate here is not subject to be removed upon the application of a nonresident guardian of nonresident minors, heirs at law, they having no right of appointment in consequence of not having the right to administer upon the estate in North Carolina. Revisal, sec. 5, subsec. 2. *Wallis v. Wallis*, 60 N. C., 78, and that line of cases relating to the appointing powers of minors, etc., cited, distinguished, and discussed by ALLEN, J.

APPEAL from WAKE, from order rendered by *Daniels, J.*, at chambers, 11 December, 1911.

This is a proceeding to remove an administrator.

Harry O. Bannister, who resided in the city of Raleigh since April, 1907, as manager of the Western Union Telegraph office, died 2 May, 1911, at Richmond, Va. His father and mother, as well as his wife and infant child, and all of his brothers and sisters, had predeceased him. His sister, Mrs. Lydia M. Boynton, *née* Lydia M. Bannister, who died in December, 1910, residing in the city of Richmond, Va., who was married to George A. Boynton of that city, left children surviving her, Emma R. Boynton, Gussie Oscar Boynton, Frank Elisha Boynton, and Oscar Bannister Boynton, all being infants, under fourteen years of age.

On 1 June, 1911, Leo D. Heartt, public administrator, applied to Millard Mial, Clerk of the Superior Court of Wake County, for letters of administration upon the estate of H. O. Bannister. No notice was given or attempted to be given to any of the next of kin, nor was any renunciation or waiver by any one filed. The estate of H. O. Bannister consisted of some personal property in Raleigh to the value of $200 and two insurance policies, which aggregated $1,800. The clerk issued the letters of administration to Leo D. Heartt, the public administrator.

The said Bannister was a comparative stranger in Raleigh, and had no known heirs or next of kin, and he left creditors in Raleigh whose debts aggregate about $600, all of whom resist the petition.

J. C. Marcom, who was appointed a public administrator of Wake County on 24 April, 1902, died in July, 1903, and on 11 July, 1903, Leo D. Heartt was appointed public administrator for the county, the appointment stating that the term expired 24 April, 1910.

This proceeding was begun in August, 1911, asking for the removal of Heartt, administrator, and the appointment of A. B. Andrews, Jr., who claims to be the nominee of the next of kin.

The next of kin are four children under fourteen years of age, who are nonresidents, and the said Andrews is recommended for appointment by their guardian, who is also a nonresident.

The clerk dismissed the petition, and this ruling was affirmed by the judge of the Superior Court, and the petitioner appealed.

*A. B. Andrews, Jr., for plaintiff.*
*Armistead Jones & Son for defendant.*

ALLEN, J.   J. C. Marcom was appointed Public Administrator of Wake County on 24 April, 1902, and died in July, 1903, and Leo D. Heartt was appointed such administrator on 11 July, 1903, the appointment stating that the term expired 24 April, 1910, eight years after the date of the appointment of said Marcom.   On 2 May, 1911, H. O. Bannister died in the city of Richmond, having lived in Raleigh up to a short time before his death, leaving in Raleigh a small personal estate and several creditors.   He was a comparative stranger in Raleigh, and at the time of his death had no heirs or next of kin anywhere, so far as known, in this State.

On 1 June, 1911, letters of administration were issued to the said Heartt on the estate of said Bannister, upon his application as public administrator.

The petitioners contend, on these facts, that the term of the public administrator is eight years; that as the said Marcom was appointed on 24 April, 1902, and died in July, 1903, that the appointment of the said Heartt was for the unexpired term of Marcom, ending 24 April, 1910, and that therefore he was not public administrator at the time of his application for letters of administration on the estate of said Bannister, while the said Heartt contends that he was appointed for a full term of eight years.

An examination of the sections of the Revisal (sections 18 to 21 inclusive) relating to the appointment of a public administrator show that he may be appointed for a term of eight years, and that no period is fixed when the term shall begin or end, and no provision is made for filling a vacancy, or for making an appointment for an unexpired term.

Under these circumstances the courts hold with practical unanimity that an appointee to a public office holds for the full term, although the prior occupant had only held for a part of his term, and in our opinion the principle applies with greater force to one who is not strictly a public officer, as is the case of a public administrator.   *S. v. Smith,* 145 N. C., 476.

The cases are collected in the note to *S. v. Corcoran,* 206 Mo., 1, as reported in 12 A. and E. Ann. Cases, 573.

The fact that the clerk was mistaken as to the effect of the appointment, and said it would expire 24 April, 1910, cannot affect the title of the administrator.

If, however, it appeared that Leo D. Heartt was not public administrator at the time of his appointment as administrator of Bannister, it would not follow necessarily that he would be removed. It is found as a fact that he is a man of very high character, and is capable and competent to act as administrator, and the creditors of Bannister, instead of asking for his removal, join in a request that he be retained, and he has been appointed administrator of Bannister and has given bond as such, and it would not, therefore, be proper to remove him except at the instance of one having a prior right to administer.

This brings us to the principal question debated by counsel, which is as to the rights, under our statute, of the nominee of a nonresident guardian of nonresident minors to administer.

The petitioner contends that such nominee has the right to administer, and relies on *Ritchie v. McAustin,* 2 N. C., 251, decided in 1793, which holds that the nominee of an alien nonresident has this right; *Carthey v. Webb,* 6 N. C., 268, decided in 1813, holding that where the next of kin are aliens and residents of a country at war with the United States, that the nominee of the kindred next in degree is to be preferred to a creditor; *Smith v. Munroe,* 23 N. C., 351, decided in 1840, holding that one residing abroad may nominate; *Little v. Berry,* 94 N. C., 437, decided in 1886, that next of kin who are residents may nominate; *Williams v. Neville,* 108 N. C., 565, decided in 1891, that the next of kin who are residents may nominate; *In re Meyers,* 113 N. C., 548, decided in 1893, that the husband, a resident, may nominate the administrator of his deceased wife.

These authorities would be conclusive as to the right of a nonresident, who is next of kin, to nominate, if the qualifications and disqualifications of those claiming the right to administer had remained the same from 1793, when the first of these cases was decided, and 1893, the date of the last; but it will be found that there have been important and material changes in the

statutes during this period and since then; and in considering these changes it must be remembered that no case has been found since *1868* holding that an alien nonresident may nominate, and none since *1905* holding that a nonresident may do so.

We have been unable to find any statute prior to 1868 which prevented a nonresident, whether an alien or not, from qualifying as administrator in this State, and the diligent and learned counsel for the petitioner concedes that there is no such statute.

In 1868, C. C. P., sec. 457, the courts were prohibited from issuing letters of administration to "an alien who is a nonresident of this State," and the statute remained in this condition until the Revisal of 1905, when it was changed to read: "is a nonresident of this State, but a nonresident may qualify as executor." (Revisal, sec. 5, subsec. 2.)

It follows that prior to 1868 a nonresident, whether an alien or not, could qualify as administrator in this State, and being entitled to qualify, he could, under the rules of the common law, nominate some one to act in his place, and from 1868 to 1905 a nonresident, who was not an alien, for the same reason had the right.

If, therefore, the right to nominate is dependent on the right to administer, the cases from our reports, referred to, were correctly decided, and are not in conflict with the position that a nonresident, who cannot administer under the Revisal of 1905, has no such right.

There is much conflict of authority in the different States as to whether the right to nominate is dependent upon the right to administer, some of the courts holding that the next of kin, when disqualified under the statute from acting as administrator on account of nonresidence, may nominate, and others holding to the contrary, the decisions being frequently dependent on the language of a statute expressly conferring the right to nominate, and we have no such statute.

The right to administer is not as important now as it was before the statute of distributions; as is clearly pointed out by *Chief Justice Pearson* in *Stoker v. Kendall,* 44 N. C., 242, and approved in an opinion by *Chief Justice Nash* in *Atkins v. Mc-Cormick,* 49 N. C., 274. *Judge Pearson* says: "The object in

appointing an administrator is to have the estate of the intestate taken care of. Since the statute of distributions, it in fact makes but little difference who is appointed administrator, so that he is a fit person and gives the bond required by law. Prior to that statute, as the administrator had a right to the surplus, after the debts were paid, it was a matter of very considerable consequence to obtain letters of administration, and there were frequently contests about the right."

When it is remembered that under our statute the administrator has no interest in the estate, and that he acts under the direction of a court, whose duty it is to see that a competent person is appointed, and that he cannot, by any act of his, affect the rights of those entitled to share in the distribution of the estate, it would be strange if one who is disqualified to act as administrator could name the person who must be appointed.

While, as we have said, there is authority to the contrary, the better view, as we think, is that the right to nominate depends on the right to administer.

The law is so stated in Croswell on Ex. and Admr., p. 92: "In many of the United States, however, by statute or by judicial decision, the person entitled to administration, whether resident in the State or not, may nominate some other person to the administration in his stead. And if the person who is entitled to administer renounces in favor of another, the appointee may proceed to have letters which have been wrongfully granted to a third person revoked, and himself appointed instead. . . . In other States it is held that the right to administer is merely personal, and does not include the right or power on the part of the person possessing it to nominate or select another person to be appointed in his stead. When the power of nomination is conferred by express statute, it will be limited to the persons named in the statute, and will not be extended to their representatives. . . . The right of persons who are entitled to administer, but who reside out of the State, to appoint some resident of the State to take administration in their stead is in some States recognized, at least as far as a surviving husband, widow, and next of kin are concerned, without regard to statutes. But by statute in some States, nonresidence in the State renders the

person otherwise entitled to administer incompetent, and in such case his appointee is also incompetent, and the appointment is nugatory. . . . Generally, if the person entitled to administration is incompetent for any cause, his right of nomination fails, and, except as above stated, no right of nomination exists."

In the case of *In re Muersing,* 103 Cal., 587, a nonresident next of kin attempted to exercise the power of nomination, and the Court says: "The father not being a resident of the State, was not competent or entitled to serve as administrator, and being incapable himself of administering, it was not competent for him to nominate an administrator," and other cases to the same effect are cited in the notes of Crowell on Ex. and Admr., *supra.*

The recent case of *Butcher v. Kunst,* 65 W. Va., 390, is in .point, as appears from the following excerpt from the opinion:

"The first question is, Had Louisa Butcher, as distributee of said estate, the right of administration or the right of nomination, as claimed? Second, if she had not such right, had she, by virtue of her interest in said estate, right of protest, and advice in the appointment of an administrator and right of appeal from the adverse judgment? Prior to the amendment of section 4, chapter 85, Acts of Legislature 1903, chapter 13, now section 3258, Code 1906, if sole heir and distributee and a competent· person, she would have had precedence in right of administration, but by that amendment, being a nonresident, that right was wholly taken away. That amendment added the proviso, 'that no person not a resident of this State shall be appointed or act as such personal representative, unless the decedent be a nonresident of the State at the time of his death, and names in his will a nonresident as his executor.' It is quite evident that counsel on both sides in this controversy have overlooked this amendment. Without such authority given by the statute, her nomination would not bind the court in exercising sound discretion in the appointment of some suitable person. 18 Cyc., 92. The statute is plain and does not call for interpretation. Its terms clearly precluded Louisa Butcher, a nonresident, from administering said estate, and her appointees and next of kin acquired no rights under her to administer thereon. This answers the first question."

We are of opinion, therefore, that the right to nominate depends upon the right to administer, and that the nominee of the nonresident guardian of nonresident minors was not entitled to have the appointment of Heartt revoked.

The petitioner says, however, that the disqualification of a nonresident to administer is in the same section with the disqualification of one because under twenty-one years of age, and that it has been held in this State, in *Wallis v. Wallis,* 60 N. C., 78; *Little v. Berry,* 94 N. C., 437, and in *Williams v. Neville,* 108 N. C., 561, that an infant, who cannot administer, may nominate.

An examination of these cases will show that the question was not raised in either.

In the *Wallis case* the county court appointed the widow of the intestate administratrix. In the Superior Court the order was reversed, because the widow was under the age of twenty-one, and the court appointed the nominee of the mother of the intestate. In the Supreme Court it was held that the nominee of the mother was entitled to administration, but that it ought to have been granted *durante minoritate,* and that the Superior Court, instead of granting the administration, ought to have directed the county court to do so. There is a statement in the opinion that the court might have granted letters to the nominee of the widow, and two cases are cited in support of the *dictum (Ritchie v. McAustin,* 2 N. C., 251, and *Pearce v. Castrix,* 53 N. C., 71), in neither of which was the right of an infant to nominate involved, and the *Wallis case* was approved in the *Little case* and in the *Williams case,* in support of the proposition that the next of kin, who are entitled to administer, may appoint, the next of kin being, so far as the cases disclose, of full age and residents.

If, however, the law is stated correctly in the *Wallis case,* there is a distinction between the disqualification on account of nonage and nonresidence, because, in the first, the right to administer continues to exist, while the exercise of the right is suspended during minority, and in the case of a nonresident he has never had the right to administer.

Applying these principles to the facts appearing in the record, we conclude that the nominee of the guardian is not entitled to have letters of administration issued to him, and that the appointment of Leo D. Heartt ought not to be revoked.

Affirmed.